IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| DIADAN HOLDINGS, LTD., | * |
| Plaintiff, | * |
| vs. | * |
| | CASE NO. 3:23-CV-107 (CDL) |
| MIGHTY HORN MINISTRIES INC. and PHILIP A. DRISCOLL, | * |
| | * |
| Defendants. | |
| | * |

O R D E R

Presently pending before the Court is Defendants' motion to dismiss (ECF No. 15). For the reasons set forth below, the Court grants the motion as to all of Plaintiff's claims except its fraud claim and the related conspiracy to defraud claim against Philip Driscoll and Mighty Horn Ministries, Inc.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence

of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL ALLEGATIONS

DiaDan Holdings, Ltd. alleges the following facts. In 2014, Mighty Horn Ministries, Inc. executed a promissory note ("Note") in the original principal amount of $475,000.00 in favor of Mighty Horn's president Philip Driscoll and his then-wife, Lynne Driscoll. The Note recited that it was secured by a security interest in real property Mighty Horn owned in Greensboro, Georgia. Mighty Horn also executed a "Deed to Secure Debt" in favor of the Driscolls; the instrument states that it "is a deed passing legal title pursuant to the laws of the State of Georgia governing loan or security deeds and is not a mortgage; and is made and intended to secure the payment of indebtedness of Grantor to Grantee evidenced by the Note." Am. Compl. Ex. 2, Corrective Deed to Secure Debt 3, ECF No. 11-2; *compare* O.C.G.A. § 44-14-60 (stating that when real property is conveyed by deed to secure debt, legal title passes to the grantee "until the debt or debts which the conveyance was made to secure shall be fully paid") *with* O.C.G.A. § 44-14-30 (stating that a mortgage "is only security for a debt and passes no title").

2

The Deed to Secure Debt gave the grantee the right to exercise the power of sale in the event of a default on the Note.

In 2016, DiaDan obtained a judgment against the Driscolls in the Superior Court of Greene County, Georgia for $362,867.75, plus interest. To collect on its judgment, DiaDan levied against the Note and security deed. Both the Note and the security deed were assigned to DiaDan following a sheriff's sale, and the transfer and assignment were recorded with the Greene County clerk in February 2017. After the assignment of the Note and security deed, Philip knew that he no longer had a right to collect payments from Mighty Horn under the Note.

DiaDan made a demand on the Note, but Mighty Horn failed to pay amounts due under the Note. In April 2017, DiaDan foreclosed on the security deed and purchased the Greene County property by credit bid in the amount of $200,000.00, then executed a deed under power of sale transferring ownership of the property to itself on April 18, 2017. DiaDan does not allege that it confirmed the sale as permitted under O.C.G.A. § 44-14-161, and it does not dispute that it failed to obtain confirmation of the foreclosure sale. DiaDan does not allege that it had a security interest in any property owned by Mighty Horn except the Greene County property.

After the judgment was entered against the Driscolls in March 2016, DiaDan served post-judgment interrogatories and requests for production of documents on the Driscolls, which were largely

3

ignored. The Greene County Superior Court granted DiaDan's motion to compel responses to the discovery requests, but the Driscolls still did not respond. The Driscolls also failed to appear for their depositions. The Greene County Superior Court found that the Driscolls were in contempt and ordered that they respond to the written discovery requests and appear for depositions. When the Driscolls failed to do so, the Greene County Superior Court reiterated that the Driscolls were in contempt and ordered that the Driscolls be arrested and incarcerated until they complied with the court's order.

Between September 2017 and March 2022, while DiaDan was attempting to collect from Philip under the Greene County judgment, Mighty Horn—which was controlled by Philip—made fifteen payments to Philip, totaling $44,820.20. At the time, Mighty Horn and Philip knew that the Note had been assigned to DiaDan. DiaDan alleges that Philip, as president of Mighty Horn, directed the money to himself and fraudulently concealed these payments from DiaDan during the post-judgment discovery in the Greene County superior court action. In March 2022, following his arrest and incarceration under the 2017 contempt order, Philip finally responded to DiaDan's post-judgment discovery requests in the Greene County action and disclosed the payments, which were categorized as Note payments and not income to Philip. DiaDan now asserts claims against Mighty Horn and Philip for fraud, conversion, civil conspiracy, money had

and received, and violation of Georgia's Racketeer Influenced and Corrupt Organizations Act.

## DISCUSSION

DiaDan makes two basic types of claims: (1) a fraud claim and a related conspiracy to commit fraud claim (Count I and Count III) and (2) theft-type claims and a related conspiracy to commit theft claim (Counts II, III, IV, V). The Court addresses each type of claim in turn.

### I. The Fraud Claim

DiaDan's fraud claim is for fraudulent concealment. This claim has five elements: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Conner v. Hart*, 555 S.E.2d 783, 787 (Ga. Ct. App. 2001) (quoting *ReMax N. Atlanta v. Clark*, 537 S.E.2d 138, 141 (Ga. Ct. App. 2000)). DiaDan alleges facts to support all the elements of a classic fraudulent concealment claim. DiaDan alleges that Philip had a duty to respond to DiaDan's post-judgment discovery requests and disclose any payments he received, including payments from Mighty Horn, but he failed to do so and thus concealed the payments from DiaDan. DiaDan further contends that Driscoll willfully concealed the payments with the intention of frustrating DiaDan's collection efforts. And DiaDan asserts that the concealment reasonably prevented DiaDan from taking action to

collect from Driscoll before he dissipated the funds, which caused DiaDan damages. Accordingly, the Court declines to dismiss the fraud claim against Philip.[1]

As for the fraud claim against Mighty Horn, it appears to be rooted in the assertion that Mighty Horn knew the Note had been assigned to DiaDan and that any voluntary payments on the Note should be made to DiaDan. Despite that knowledge, Mighty Horn worked with Philip to make secret voluntary payments to Philip that were categorized as Note payments, thus helping Philip evade DiaDan's post-judgment collection efforts. At the present stage of the litigation, drawing all reasonable inferences in favor of DiaDan, the Court is satisfied that these allegations are sufficient to make out a fraudulent concealment claim against Mighty Horn, as well as a claim for conspiracy to defraud against both Philip and Mighty Horn.[2]

## II. The Theft-Type Claims

The key argument underlying the rest of DiaDan's claims (conversion, money had and received, Georgia RICO, and civil conspiracy based on torts other than fraudulent concealment) is

---

[1] The Court provides no advisory opinion at this stage as to whether DiaDan will eventually be able to produce evidence supporting its allegation that the concealment caused DiaDan to forego certain actions that likely would have led to the collection of part or all of the amounts owed.

[2] The sole basis for Defendants' motion to dismiss the conspiracy claim is their argument that there is no underlying tort. Because the fraud claim survives, that argument fails.

that because the foreclosure sale did not satisfy the entire debt on the Note, Mighty Horn remained liable for the deficiency. So, DiaDan contends, any funds Mighty Horn paid to Philip "belonged" to DiaDan. DiaDan emphasizes that it is not asserting a breach of contract claim to enforce the Note, and it contends that it is not seeking Mighty Horn's property to enforce the Note. Rather, DiaDan argues that when Philip caused Mighty Horn to make "note payments" to himself instead of DiaDan between September 2017 and March 2022, Defendants stole DiaDan's property, and DiaDan is now seeking a remedy for a diversion of "its" assets from Mighty Horn to Philip.

DiaDan did not point to any authority that unsecured assets held by a debtor—like the cash Philp caused Mighty Horn to pay himself—"belong" to a creditor under the circumstances presented here. DiaDan points out that Mighty Horn remains indebted under the Note because the foreclosure sale did not extinguish the debt that was secured by the property. *See, e.g.*, *Taylor v. Thompson*, 282 S.E.2d 157, 158 (Ga. Ct. App. 1981) ("The failure to obtain confirmation of a sale does not operate to extinguish the remaining debt[.]"). But since DiaDan failed to obtain an order of confirmation of the foreclosure sale that did "not bring the amount of the debt secured by the deed," it may not take action "to obtain a deficiency judgment." O.C.G.A. § 44-14-161(a). "A deficiency judgment is the imposition of personal liability on" a debtor for the unpaid balance of a secured debt "after foreclosure has failed

7

to yield full amount of due debt." *Wells v. Regions Bank*, 829 S.E.2d 889, 892 (Ga. Ct. App. 2019) (quoting *Iwan Renovations, Inc. v. N. Atlanta Nat. Bank*, 673 S.E.2d 632, 634-35 (Ga. Ct. App. 2009)).³ If "a secured creditor seeks to satisfy its claim from property of a debtor other than the security itself, the creditor is in substance seeking a deficiency judgment." *C.K.C., Inc. v. Free*, 395 S.E.2d 666, 667 (Ga. Ct. App. 1990) (quoting *Redman Indus., Inc. v. Tower Properties, Inc.*, 517 F. Supp. 144, 151 (N.D. Ga. 1981)).

So, as DiaDan seems to acknowledge, although DiaDan retains title to the unpaid Note, DiaDan cannot impose personal liability on Mighty Horn for the unpaid balance of the Note that was secured by the foreclosed property since DiaDan did not obtain an order of confirmation or obtain a judgment on the Note before pursuing foreclosure. Rather, its remedies are limited: after a foreclosure sale, "a creditor retains the option of selling other security to recover the deficiency" or applying assets in its "possession to the existing deficiency." *Citizens Bank of Americus v. Wiggins*, 167 B.R. 992, 994 (M.D. Ga. 1994). Therefore, if Mighty Horn had made a voluntary payment to DiaDan, DiaDan would be permitted to retain the payment and apply it to the deficiency. *See Turpin v.*

---

³ The cases refer to foreclosure sales associated with "mortgage debt," but the confirmation statute applies to foreclosure sales of real estate "under powers contained in security deeds, mortgages, or other lien contracts"—not just mortgages. O.C.G.A. § 44-14-161(a).

8

*N. Am. Acceptance Corp.*, 166 S.E.2d 588, 592 (Ga. Ct. App. 1969) (concluding that because the debtor's underlying debt was not extinguished by a foreclosure sale and because the debtor could not establish that the property sold for enough to satisfy the entire debt, the debtor could not recover the voluntary payments she made after the foreclosure sale—even though the creditor would not have been allowed to sue for a deficiency absent a confirmation order). But DiaDan pointed to no authority that the "applying assets in its possession" remedy extends to assets *not* in its possession, like the funds Mighty Horn paid to Philip.  For these reasons, the Court finds that DiaDan did not adequately allege that the disputed funds belonged to it, so DiaDan's theft-type claims must be dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 15) is granted as to all of Plaintiff's claims except its fraud claim and the related conspiracy to defraud claim against Philip Driscoll and Mighty Horn Ministries, Inc.

IT IS SO ORDERED, this 15th day of March, 2024.

S/Clay D. Land
_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
